United States District Court
Southern District of Texas
**ENTERED**
October 05, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-14-0246-1 |
| | § | |
| FABIAN ANTONIO VENGOECHEA | § | |

## MEMORANDUM OPINION AND ORDER

Defendant Fabian Antonio Vengoechea, a federal prisoner, filed a *pro se* motion for a compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A). (Docket Entry No. 149.)

Having considered the motion, the exhibits, the record, matters of public record, and the applicable law, the Court DENIES the motion for the reasons shown below.

### *Background and Claims*

Defendant is a 59-year-old male prisoner currently confined at the Bureau of Prisons ("BOP") Schuylkill FCI in Pennsylvania. Defendant pleaded guilty on February 5, 2016, to wire fraud in violation of 18 U.S.C. § 1343. (Docket Entry No. 36.) The Court sentenced him to 71 months' imprisonment on December 15, 2017, followed by a 4-year term of supervised release. Restitution was ordered in the amount of $746,300.00. Defendant has served approximately 46 months, or 64% of the sentence imposed by this Court.

Defendant is a lawful permanent resident of the United States who was born in Colombia. He states that no U.S. Immigrations and Custom Enforcement ("ICE") detainer has been lodged against him at this time. However, defendant's passport was transferred to

ICE on March 2, 2018. In the letter denying defendant a compassionate release, the Warden of defendant's facility noted that he was not suitable for release to home confinement in that "[s]pecifically, you have a Public Safety of Alien and are required to have a hearing before an immigration judge." (Docket Entry No, 149-1, p. 8.)

Defendant claims entitlement to a compassionate release on three grounds: (1) his medical conditions and new COVID-19 variants; (2) his entitlement to a low security BOP facility close to his family, and (3) improper questions posed by the Government at sentencing regarding his finances. He asks the Court to reduce his sentence to time served and release him from prison.

## *Legal Standards*

Defendant brings this motion for sentence reduction and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court in its discretion to modify a sentence under certain circumstances. Under the current version of the statute, a motion may be made by either the Director of the BOP or by a prisoner after the prisoner has fully exhausted his administrative rights. 18 U.S.C. § 3582(c)(1)(A). Compassionate release provisions under section 3582(c)(1)(A) authorize a court to modify a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction."

The United States Sentencing Commission addressed in a policy statement what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody. *See* U.S.S.G. § 1B1.13. However, the Fifth Circuit Court of Appeals has held that

the Sentencing Commission's compassionate release policy statement does not bind district courts in considering motions brought by prisoners under 18 U.S.C. § 3582(C)(1)(A). *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. April 7, 2021). Accordingly, the district courts are free to determine whether a defendant's particular medical condition or other situation constitutes extraordinary and compelling reasons for a compassionate release. *See United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. Sept. 4, 2020); *United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir. 2011) ("[T]he decision whether to ultimately grant a modification is left to the sound discretion of the trial court."). A defendant in a section 3582(c)(1)(A) motion has the burden to establish that relief is warranted in his or her case.

The court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. The court must base its decision on "a thorough factual record" and "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a).

Thus, a defendant may be eligible for a compassionate release under section 3582(c)(1)(A) if the court finds "extraordinary and compelling reasons" warranting a

sentence reduction and that the reduction would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).

## *Exhaustion*

The record supports defendant's assertion that he exhausted his administrative remedies prior to filing this motion. (Docket Entry No. 149-1, pp. 6–8.)

## *Extraordinary and Compelling Reasons*

### *Medical Conditions*

Defendant acknowledges that he received two doses of the Pfizer COVID-19 vaccine in prison, but claims that the following medical conditions leave him vulnerable to serious illness or death from new COVID-19 variants: two back surgeries thirty and sixteen years ago; asthma; type II diabetes; high blood pressure; high cholesterol and lipid levels; abnormal creatinine levels, leading him to believe he has renal deficiency; two episodes of gout in prison; an abdominal hernia; reduced vision, likely due to cataracts; and a recent diagnosis of shoulder and "trigger finger" arthritis. (Docket Entry No. 149, pp. 7–8.)

The Court has carefully reviewed the 97 pages of medical records submitted by defendant, as well as the short note from a physician who treated him from 2014-2017 prior to his incarceration. The note, dated May 14, 2020, and directed "To whom it whom it may concern," reports that during 2014–2017, defendant had hypertension, hyperlipidemia, diabetes type II, and asthma. According to the physician, "The[se] chronic diagnoses . . . and his current age put [defendant] at high risk to contract the CO-VID [*sic*] 19. As a medical

doctor it is my recommendation that [*sic*] patient get granted house arrest to finish the remainder of his sentence." (Docket Entry No. 149-1, p. 9.) There is no indication that the physician's opinion is based on defendant's current medical status or that she has reviewed his current medical records.

Defendant's Schuylkill FCI medical records indicate that he is "prediabetic," and is being monitored for any change in that status. His most recent A1C diabetes screening test results were 6.1, placing him within the prediabetic category of "increased risk" of developing diabetes. *Id*., p. 15. His asthma and hypertension are being treated and controlled through medication and monitoring, as are his hyperlipidemia and cholesterol levels. Defendant takes Ventolin by inhaler as needed for asthma, and the medical records indicate that his asthma is controlled and asymptomatic. *Id*., p. 13, 15–17, 19, 23, 24. The records reveal no diagnoses for arthritis, renal disease, or gout. Although defendant personally believes he is developing renal problems, his most recent glomerular filtration rate ("GFR") test results were normal, and no renal concerns were noted in the records. His request to be seen by an optometrist for his low vision was approved, and he is awaiting scheduling. *Id*., p. 60. Although he complained of "gout" in his right foot in May 2021, the medical record indicated it was not likely gout and that he was ambulating without difficulty. *Id*., p. 34. His hypertension is being controlled with beta blockers and hydrochlorothiazide; his most recent blood pressure reading appearing in the records was 128/80 on June 9, 2021. *Id*., p. 23. His hyperlipidemia and cholesterol levels are being addressed through medication. *Id*., p. 24.

He received both doses of the Pfizer COVID-19 vaccine in June and July 2021, and a pneumococcal vaccine in April 2021. *Id*., pp. 26, 28. Nothing indicates that defendant's prior back surgeries, shoulder pain, "trigger finger," and abdominal hernia unduly limit his ability for self-care or his activities of daily living, or that they would leave him vulnerable to serious illness or death should be contract a COVID-19 infection.

Although defendant complains that a "medical doctor" is not on staff at his facility, his current medical records show that he is being provided medical examinations, evaluations, care, and treatment at Schuylkill FCI by an on-site licensed osteopathic physician, physician assistants, and nurse practitioners. (Docket Entry No. 149-1, pp. 10–36, 60.) He acknowledges that nurses and a pharmacist are on staff at the facility.

Defendant does not show that his current medical conditions have elevated his risk for death or serious injury should he contract a COVID-19 variant, or that his ability for self-care has been impaired.

Further, defendant does not demonstrate an increased risk of serious illness or death from a COVID-19 variant due to his confinement at Schuylkill FCI. The facility currently reports having no prisoners with positive COVID-19 test results and no reported inmate COVID-19 deaths. A total of 487 prisoners have recovered from COVID-19 infections at the facility.[1] Although defendant expresses legitimate and common concerns regarding COVID-19 and its variants, he does not establish that his facility cannot manage an outbreak

---

[1] *See* https://www.bop.gov/coronavirus/ (accessed on October 3, 2021).

or that the facility could not treat him if he were to contract the virus. The Fifth Circuit Court of Appeals has held that fear of COVID-19, standing alone, does not warrant a compassionate release. *See United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021).

Defendant's current medical conditions do not constitute extraordinary and compelling reasons for granting him a compassionate release.

*Entitlement to a "Low Security" Facility*

Defendant next states he clearly remembers this Court sending him to a low security BOP facility or camp at his sentencing hearing on December 15, 2017. (Docket Entry No. 149, p. 11.) He complains that, due to BOP closures of low security private facilities, he was transferred to his current facility, Schuylkill FCI, a medium security facility far from his family and housing violent criminals with multiple life sentences. He argues that "this is not what the hon. [*sic*] court in Houston had intended nor had a purpose for." *Id*.

This Court made no recommendation to the BOP in defendant's criminal judgment as to his assigned facility, either as to location, programs, or security level. (Docket Entry No. 95, p. 2.) Nor does this Court have any independent recollection of having agreed to "send defendant to a low security BOP facility or camp." *Id*. Indeed, this Court has no binding authority to order the BOP to assign defendants to any particular facility, camp, location, classification, or security level upon sentencing. While a district court may, in its discretion, make a recommendation that a prisoner serve a term of imprisonment in a

particular location or treatment facility, ultimately "the decision-making authority rests with the BOP." *Tapia v. United States*, 564 U.S. 319, 331 (2011); 18 U.S.C. § 3621(b).

Defendant's transfer from a private low security BOP facility to a medium security BOP facility does not constitute an extraordinary and compelling reason for granting him a compassionate release under 18 U.S.C. § 3582(C)(1)(A).

*Misstatements at Sentencing as to his Finances*

Defendant complains that the Government was allowed to ask at sentencing whether he paid for his daughter's college education and extinguished the outstanding mortgage on his ex-wife's home in lieu of paying the funds to the victims of his crime. Defendant contends that, had these questions not been asked at sentencing, he would have received a lesser sentence. In short, he complains that misleading arguments were made and improper evidence presented at his sentencing hearing, resulting in a lengthy sentence.

A motion for a compassionate release is not a proper vehicle for challenging evidence presented at sentencing. Contrary to defendant's arguments, the Government's inquiries and arguments at sentencing do not constitute an "extraordinary and compelling reason" for reducing his sentence to time served through the granting of a compassionate release.

As shown above, defendant's three grounds present no extraordinary and compelling reasons for granting a compassionate release in this case. However, even assuming extraordinary and compelling reasons were shown, the applicable sentencing factors under 18 U.S.C. § 3553(a) would strongly weigh against the granting of relief, as shown below.

### *Sentencing Factors*

Defendant does not demonstrate that the applicable factors set forth under 18 U.S.C. § 3553(a) weigh in favor of an early release. These factors include, as applicable:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense.

*United States v. Chambliss*, 948 F.3d 691, 693 n.3 (5th Cir. 2020); 18 U.S.C. § 3553(a).

Defendant pleaded guilty to wire fraud in violation of 18 U.S.C. § 1343. The Court sentenced him to 71 months' imprisonment followed by a 4-year term of supervised release, and ordered payment of $746,300.00 in restitution to the victims of his crime. The PSR shows that the Government recorded a conversation between defendant and his victims, wherein he told his victims he would agree to return their $1 million if they immediately withdrew their complaint with the FBI. (Docket Entry No. 65, ¶¶ 27–33.) Defendant threatened his victims with legal action if they did not agree to withdraw their FBI complaint, and told them their "best chance" of getting their money back was by stopping the criminal investigation. *Id*. Consequently, "defendant threatened the victims in this case with a lawsuit and attempted to intimidate them so they would withdraw the complaint they filed against him, with the FBI, due to the instant offense," thus obstructing justice. *Id*., ¶ 41.

Defendant, acting through counsel, subsequently offered to "settle" the sentencing portion of his criminal case. He stated that if the Government would agree to recommend a 2-month sentence of imprisonment, it would be an incentive for him to continue cooperating in the sale of his business to allow full repayment of restitution owed to his victims. According to defendant, without this agreed recommendation for a minimal sentence, he could give away his business for free resulting in very minimal means from which to pay restitution to his victims. *Id.*, ¶ 36. Defendant also offered to sign a contract for payments of the restitution, provided that his repayment obligations would cease upon the death of his very elderly victims. Unsurprisingly, the Government rejected these overt attempts by defendant to usurp the direction and terms of his sentencing.

Defendant's sentence was appropriate under the guidelines in light of his criminal actions. Reducing the sentence imposed by this Court to time served would result in a sentence that falls substantially below what Congress deemed appropriate for similarly situated defendants under the guidelines. Although defendant shows he has completed various foreign language classes in prison and taught English to prisoners at his facility, these rehabilitation efforts, while laudable, do not weigh strongly in favor of granting relief. The Court finds that reducing defendant's sentence to time served would not promote respect for the law, provide just punishment, or afford adequate deterrence.

Consideration of the applicable sentencing factors leads this Court to conclude that relief under 18 U.S.C. § 3582(C)(1)(A) is not merited in this case.

*Conclusion*

Defendant's motion for a compassionate release under 18 U.S.C. § 3582(C)(1)(A) (Docket Entry No. 149) is DENIED.

Signed at Houston, Texas, on October  5 , 2021.

Gray H. Miller
Senior United States District Judge